LE BLANC, Justice.
These two cases are consolidated on appeal as they involve two elections for Mayor and officers in the town of New Roads which were held within a period of less than six months in the early part of 1949.
In order to reach a more ready understanding of the issues we deem it proper to make a brief chronological statement of the events leading to this litigation, as they took place.
The first of these two elections, presumably held under the authority granted to them by the charter o'f the Town of New Roads, was ordered by the Mayor and councilmen of the town by resolution adopted at a meeting held on the 7th day of December 1948. It was called for and held on January 3, 1949 and resulted in one of the candidates for Mayor, namely, J. Bradford Lancaster, receiving 285 votes, and the other, Lionel J. Langlois, receiving 284 votes. The results were promulgated in accordance with the provisions of the Town Charter and in due time a commission was issued to Lancaster and the councilmen who were elected on his ticket with ° him.
On January 27, 1949 a suit was filed in the 18th Judicial District Court of the Parish of Pointe Coupee by Lionel J. Langlois who was joined by numerous residents of the town of New Roads alleging themselves to be duly qualified electors of the said town, in which they sought to have the *1007 ■election held on January 3, 1949 declared to be null and void and that another election be ordered for the office of Mayor of the said town; and in the alternative, that plaintiff Langlois be declared the duly elected Mayor. The grounds on which the demand in that suit was based will be stated later on.
Upon final hearing and submission of the -case in the District -Court judgment was rendered on May 24, 1949 in 'favor of the plaintiffs declaring the election to be null and void and further ordering, as stated in t-he decree, “that another general municipal election be held in said town of New Roads as -prayed for and in -accordance with law.” A suspensive appeal was granted and made returnable to this -Court on the 23d day of June 1949. It was perfected on May 26, 1949, -and is one of the appeals presently under consideration, the record in that case -bearing number 39,485 of the docket.
On May 19, 1949, before the rendition of the judgment in the suit just referred to, the Board of Supervisors o-f Elections of the Parish of Pointe Cou-pee, which was a ■party in the said suit having joined the plaintiffs in their demand to have the election of January 3, 1949 annulled, issued a proclamation in the Pointe -Coupee Banner, a newspaper published in the town of New Roads, calling an election in said town -for the office of Mayor and -five -Councilmen, .to be held on J-une 14, '1949, and giving as authority for its action Acts No. 104 of 1922 and 125 of 1936.
In accordance with that proclamation, Lionel J. Langlois qualified as a candidate for Mayor and five other parties as candidates for the council. Lancaster, who had in the meantime taken the office of Mayor in the former election, did not offer as a candidate in that election and he and his adherents refrained -from participating in it. He had vainly attempted to enjoin the holding of that election in the District Court of the Parish of Pointe -Coupee and his application to this -Court for Writs was denied.
The election of June 14, 1949 was held in accordance with the proclamation of the Board of Supervisors of Election and Langlois who was the only candidate for Mayor received 181 votes while the candidates for councilmen received 174 votes.
On June 22, 1949, before the returns of the election of June 14, 1949 had been promulgated by the Secretary of State, Lancaster, together with some of the parties who had been elected with him as councilmen in the election of January 3, 1949, filed suit in the District -Court for the Parish of East Baton Rouge seeking to enjoin the Secretary of State, the Honorable Wade O. Martin, Jr., and the Auditor of the State of Louisana, the Honorable L. B. Baynard, Jr., from promulgating the returns of the said election of June 14, 1949 and -from -declaring that any person participating therein was elected to any municipal office in the Town of New Roads and *1009 particularly, Langlois and the councilmen whose names appeared on the ballots used in said election. The Board of Supervisors of Elections of the Parish of Pointe 'Coupee was also made a party defendant in the proceeding. The grounds on which they sought the said injunction will also be stated later on.
A temporary restraining order together with a rule nisi -for an injunction was issued on the same day, the rule being made returnable on June 27, 1949. A return to the rule was duly made and the matter came up for trial, on the question of a preliminary injunction being granted, in due time. Upon hearing of that rule, the Court, on July 20, 1949, rendered judgment granting the injunction upon plaintiffs furnishing bond in the sum of $500 and the State Officers against whom the injunction was sought were restrained and prohibited from compiling the returns of the election held on June 14, 1949 and declaring any person to have been elected therein and, further, from issuing commissions to Langlois and those who had been elected as Councilmen. From that judgment the defendants moved ‘for a suspensive appeal which was refused. The Court did grant them a devolutive appeal. They thereupon applied for Writs to this Court asking that they be granted a suspensive appeal and upon their application, this Court did, on July 29, 1949 grant to the Secretary of State, and to the Auditor of the State of Louisiana and also to the Board of Supervisors of Elections of the Parish of Pointe Coupee, a suspensive appeal without bond; and to the other defendants, a suspensive appeal upon their furnishing bond in the sum of $500. The appeal was made returnable on or before August 29, 1949 and was in due time perfected. This is the other appeal that is. presently before the Court, the record in this suit bearing the number 39,584 of the docket.
The issues in both cases, as we have said, concern the legality and validity of the said elections.
The election of January 3, 1949 is contested under the provisions o'f the Revised Statutes, Sections 1419, 1420, 1422 to 1429 being the sections incorporated in Dart’s Statutes, Sections 2835 to 2844 inclusive. The petition in 'that suit is that of Lionel J. Langlois, and thirty-four other parties divided into three groups, all alleging themselves to be duly qualified electors and residents of the town of New Roads. Made defendants in the suit are J. Bradford Lancaster, the Board of Supervisors of Elections of the Parish of Pointe Coupee and the Mayor and Councilmen of the town of New Roads. The latter were served through Olex B. Laurent, who was the Mayor of the town at the time that said election was called.
After reciting that Langlois and Lancaster were the only candidates for the office of Mayor in said election and that the tabulation of the results showed a total number of 284 votes cast for Langlois and 285 for *1011 Lancaster, the petition goes on to allege that by any legal or proper count of the votes cast Langlois received the majority and was elected; but that the said election was absolutely null and void and without legal effect and that it should so be decreed or in the alternative that Langlois should be declared to have been duly elected Mayor.
Petitioners aver that the election was purportedly held under the provisions o'f the charter of the Town of New Roads, adopted on January 20, 1894 pursuant to the provisions of Act 49 of 1882, and by an amendment to said charter adopted on January 20, 1905; that it was not held in compliance with the Constitution and Laws of the State of Louisiana applicable to the Town of New Roads; and, that particularly, it was held and all steps taken therein were in violation of the provisions of Act 224 of 1940, Act 125 of 1936, Act 61 o'f 1921, Ex.Sess., as amended, Act 246 of 1926 and Sections 6 and 15 of Article 8 of the Constitution of 1921.
They further aver that the charter of the Town of New Roads had been amended and supplemented by those provisions of law mentioned, but in any event its provisions were not complied with especially in regard to the notice of election, the appointment of commissioners and the promulgation of the results. They aver further that the provisions of the laws mentioned were ignored altogether; that the election was conducted in a grossly informal, irregular and illegal manner 'for various reasons which they set out. One of them which we consider sufficient by itself to determine the issue of the legality and its validity, is that the election held on January 3, 1949 was based on the registration o'f voters which had expired and which was divested of legal efficacy on December 31, 1948 because, by the provisions of Act 267 of 1946, amending Act 45 of 1940, a new registration of voters throughout the State was ordered beginning January 2, 1949.
The defendants filed an exception of no cause or right of action which was overruled by the Court, whereupon they filed their answer in which they aver that a legal and valid election was held in the Town of New Roads under the provisions of its charter and that Lionel J. Langlois was, himself, a candidate for the office of Mayor in that election. They deny, however, all of the allegations relating to the gross informalities, irregularities and illegalities concerning said election and aver that for the most part all of the other allegations of petition present only conclusions of law which they are not required to answer but which they nevertheless deny. They challenge the right of the plaintiffs to make a collateral attack upon the registration of voters; they having failed to contest the same in a direct action, before the election, and aver that they are now estopped to raise the question of the validity of the said registration. With regard to the allegations concerning the registration of voters *1013 throughout the State under the provisions of Act 267 of 1946, defendants aver that that Act speaks for itself and that they are not required to answer.
Further answering the defendants aver that the vote cast in the election was the largest ever cast in a municipal election held in the Town of New Roads; that the election was conducted honestly, fairly and in all good faith, free from fraud or intention to do wrong; and that the same comes under the provisions of the universal rule that, under such circumstances, full credit should he given the result regardless of any irregularity or illegality.
The Board of Supervisors of elections of the Parish of Pointe Coupee filed a separate answer in which, as already intimated, it joined its interest with that of the plaintiffs in seeking to have the election declared null and illegal and prayed accordingly.
When these cases were first submitted there was a suggestion of lack of this Court’s jurisdiction. Doubt was expressed as to the right of the Court to entertain an appeal in a contested election suit in which the main demand was to have the election declared a nullity. The thought which suggested itself was that in a suit having such an obj ect only, there is no amount in contest and appellate jurisdiction would not attach under any of the other classes of cases in which this Court is vested with jurisdiction by Section 10 of Article 7 of the Constitution of 1921.
The question seems to be one that has-vexed the Court before as will be particularly noted in the case of Perez v. Cognevich, 156 La. 331, 100 So. 444, 446. In that case the Court was considering a contest of an election held under the primary law of this State in which only the nomination to the office sought was involved, and as the nomination itself did not entitle the one receiving it to the emoluments of the office sought, which in that case, exceeded $5,000 it remained doubtful whether the emoluments could be taken into consideration in determining whether this Court was vested with jurisdiction from the standpoint of the amount in dispute. Even so, upon considering the fact that the nomination was one by the dominant political party in a parish -in which it was unlikely that the nominee would be defeated in a general election, the Court stated that the nomination itself was worth over $2,000 and therefore the Court might take appellate jurisdiction of the case.
After so expressing itself, however, the Court stated that it preferred to sustain its jurisdiction on the basis that the Constitution of 1921, by Section 12 of Article 8, had ordained the Legislature to “provide by law for the trial and determination of contested elections of all public officers, whether State, district, judicial, parochial, municipal or ward (except Governor and Lieutenant Governor), which trials shall be by the courts of law, and at the domicile of the party defendant,” and that the Legislature, in pursuance of that mandate had enacted *1015 .necessary legislation providing for such trials and making the test of appellate jurisdiction the emoluments of the offices involved for the full term. The statute so providing in that case was Act 97 of 1922, the then existing primary election law. It was stated further that the articles ■of the Constitution containing the mandate to the Legislature had reference to primary •elections as well as to elections by the people, and the contention that the Legislature could neither add to the jurisdiction of .this Court nor decrease the jurisdiction ■of the Courts of Appeal, since the jurisdiction of those courts are fixed by the Constitution, was answered by the following statement concerning section 12 of Article •8 of the Constitution of 1921: “It is a mandate to the Legislature to enact laws for the trial and determination of such cases in the courts of law.’ The section, it is true, contains no express authority authorizing the Legislature to say to what court the appeal should be taken, in the event the party cast should desire to appeal, but we think that this authority is fairly implied in the command given, and that the exercise of it is necessary in order to fully and properly execute that command. If there should be anything in the Constitution, of a general nature, which apparently stands in the way of the full and proper execution of this special mandate, such provision must be considered as yielding, for the purpose of permitting the full execution of the mandate,”
In this case, although the main demand of the plaintiff was to have the election declared null and void, the petitioners presented an alternative demand that Lionel J. Langlois, who was a candidate in the election, be declared the duly elected Mayor of the town of New Roads. In Guidry v. Dutel, 147 La. 883, 86 So. 318, a case involving a contest in a general election over the office of Town Marshal of the town of Abbeville the plaintiff had presented the same two demands as are made in this case but in the reverse order to the one in which they are here made, and this court, holding that there was no inconsistency in the two, reversed the ruling of the district court which sustained a motion to elect.
In Hart v. Picou, 147 La. 1017, 86 So. 479, a primary election contest suit, the demands were, presented in the alternative in the very same manner in which they are made in this case and although, apparently, the question of the jurisdiction of this court was not raised, the appeal was nevertheless entertained and the case decided on its merits.
If the ruling in the case of Perez v. Cognevich, supra to the effect that in a general election, where the right to’ the office itself is directly involved, the test of appellate jurisdiction depends upon its emoluments, is correct, and we have no reason to hold that it was not, we then hold that in this case where the emoluments are admittedly a sum in excess of $2,000 this Court *1017 is vested with jurisdiction of the case on appeal.
The exception of no cause of action is based on the contention that a party, desiring to contest an election under the provisions of the revised statutes under which this suit was brought, must claim that but for some irregularities in the conduct of the election, he would himself have been elected. The contention is without merit in this case because the necessary allegation to that effect is made in the petition and therefore the exception was properly overruled in the lower court.
The exception is also based on the contention that the contestant must be joined in his suit by 10 resident voters of the municpality in which the election was held. It is urged that if the registration prior to that of January 2, 1949 had expired on December 31, 1948, the ten resident voters who joined the plaintiff, Langlois, could not maintain this action because they were not resident voters of the municipality themselves.
The petition contains allegations to that effect which, taken as true in considering the exception, show that these plaintiffs are properly before the Court. This same contention is raised on the exception of no- right of action and testimony was taken to show whether or not at least ten of the said parties were voters, from which testimony it appears that at least fifteen had registered under the new registration prior to the date on which the suit was instituted, and inasmuch as we are of the opinion that the requirement that such a party be a voter of the municipality relates to the time at which the suit is filed, it would seem that there were more than ten of these parties qualified to join-the plaintiff, Langlois, in his suit. That exception was also properly overruled.
When we come to consider the case on the merits we find that in January 1894, in pursuance of the provisions of Act 49 of 1882, a -charter -of the Town of New Roads, was submitted to the voters o-f that municipality, whose l-imits had been properly defined, and was properly and legally adopted. Under Article 2 of that charter it is provided “That on the first Monday of January of each year between the hours of 10' o’clock A.M., and 4 o’clock P.M., the qualified voters being within the limits of said town shall elect by ballot a Mayor and five Councilmen * * * In January 1905 that Article of the charter was amended to provide for such an election on the first Monday of January of every fcnvrth year. That was the only change that ever was. made in the charter itself and we are informed by the record that its provisions, were complied with every four years until the time came for the election in 1949.
On December 7, 1948 the council adopted a resolution calling a regular election to-be held on January 3, 1949 for the purpose of electing a Mayor and five councilmen to. hold office during the ensuing four years. The hours of said election were fixed as *1019 •provided for in the charter; the Mayor was authorized and instructed to give notice by publication, according to law and the provisions of the charter, and to provide the necessary ballots and tally sheets. The resolution also fixed the time for filing notification of candidacies and also appointed commissioners for the election.
It is apparent that if the registration of voters, as it existed at the time this election was called, was to expire on December 31, 1948, or 24 days after the resolution calling the election was adopted, that very few, if any, residents of the Town of New Roads, who were otherwise qualified tO' vote, could have been registered under the new registration which could commence only •on January 2, 1949 and thus participate in the election to be held on the following day. It is true as shown in this record that at the time of a previous election in 1940 the Attorney General’s Office had given an opinion to the Attorney of the Town of New Roads that the old registration could be used 'in such an election. Obviously, however, such a ruling could not be supported and this is in no better manner made evident than by the fact that several subsequent opinions emanating from the same office were to the contrary.
Another reason which impels us to hold that it was impossible to hold an election on the first Monday of January of every four years arises out of the fact that in 1922 the Legislature enacted a law which in our opinion had the effect of amending the charter of the Town of New Roads as well as the charter of other towns having the same provisions for an election in January. This is Act 104 of 1922 which prescribes “That in all cases where, under existing laws, general municipal elections are required to be held prior to the Tuesday next following the second Monday of June in any year, such municipal elections throughout the State of Louisiana, the City of Baton Rouge excepted, shall be held on the Tuesday next following the second Monday of June of said year”. The evident purpose of that Act was to take care of such situations as existed in this case where there could be no qualified registered voters who could vote in the election and thus allow sufficient time for a new registration to go into effect and permit the voters to qualify themselves in order to participate therein. .
We deem it unnecessary to refer to any more than to Sections 1 and 17 of Article 8 of the Constitution of 1921 and Act 267 of 1946 to show that a voter at the time he offers to vote in any election must be “legally enrolled as a registered voter * * * ”, and that a registration, under the provisions of any law carrying out the Articles of the Constitution, must be held every four years and necessarily the new registration which was to begin on January 2, 1949 had the effect of ending and invalidating the prior registration which expired on December 31, 1948.
*1021 Another reason for which it may be said it was physically impossible for any voter to be properly registered in order to take part in an election in the town of New Roads on January 3, 1949, is because under the provisions of Section 16 of Article 8 of the Constitution, “electors shall not be registered within thirty days next preceding any election at which they may offer to vote, * * * ”. If, as we hold, the prior registration had expired on December 31, 1948 and the registration books had to be closed thirty days preceding January 3, 1949, the date the election was to be held, it is apparent that no one could have registered in time to vote in that election. Under the conditions existing there were no legal votes cast and in such cases the rule is that the election must be set aside and declared void. See 29 C.J.S., Elections, § 305, p. 427.
On this point alone, therefore, we find that we have sufficient ground to set aside the election held on January 3, 1949. The contention made that the Mayor was the only elected official whose election was contested and therefore the election of the five councilmen cannot be disturbed has to pass out of consideration because necessarily no one can be elected to office in an election that has to be declared void and set aside on the ground that no legal votes were cast therein.
We might mention that we find considerable merit in some of the other points raised, notably the one relating to the hours of the election as provided for under the town charter which, in our opinion, has been superseded by the general election law, Section 8 of Act 137 of 1896 which provides for an election between the hours of 7 o’clock in the forenoon and 6 o’clock in the afternoon, in all cities and towns having a population of less than ten thousand.
The judgment appealed from in No. 39,485 held the election of January 3, 1949' to be null -and void and further ordered that another general election be held in the town of New Roads according to law. That judgment was rendered on May 24, 1949. In the meantime however, on May 19, 1949, the Board of Supervisors of Elections for the Parish of Pointe Coupee, assuming authority which they claimed under the law, issued a proclamation calling for an election to be held in the town of New Roads on June 14, 1949. That election is. the subject of the suit brought in'the district court for the Parish of East Baton Rouge, which is now on -appeal before this, court bearing docket No. 39,584. We will, now consider that appeal.
As heretofore stated, after the decision of the first suit by the district court of the-Parish of Pointe Coupee, and after the second election had been called for June 14, 1949, by the Board of Supervisors of Election for that parish, J. Bradford Lancaster and others instituted a suit in the district court of that parish seeking to enjoin the-holding of that election on the ground that the Board of Supervisors of Elections was without any right or authority to call any *1023 election and especially so in view of the fact that that Board had intervened in the original suit and joined the plaintiffs in their demand to have the election of January 3, 1949 annulled and set aside, and should have waited until the final decision of that suit, or at least until a decision by the district court was rendered, before attempting to call another election.
The trial judge refused to grant the injunction prayed for and on his refusal to grant a suspensive appeal, an application for writs of certiorari and mandamus was presented to this Court. Upon considering the application this Court handed down its per curiam which reads as follows: “This court will not exercise its supervisory jurisdiction to disturb the action of the trial judge refusing to enjoin the Board of Commissioners of Election for the Parish of Pointe Coupee from holding a general election for municipal officers for the town of New Roads, called and (is) being conducted by said Board in accordance with the provisions of the general election laws of the State of Louisiana, on the petition of the Mayor and Council for the Town of New Roads, Pointe Coupee Parish (relators), claiming to have been commissioned to said offices for a term of four years after having been elected pursuant to the provisions of the Charter of the Town, when it appears that although this election has been declared a nullity by the district court (which judgment is now pending on appeal before this Court) they are in possession of their respective offices. They certainly cannot be injured by the election sought to be enjoined unless the appeal from the judgment of the district court declaring the previous election a nullity is affirmed, in which event, their rights, if any, to continue in office may be tested by proper proceedings.
“The application for writs is denied.”
The parties apparently did not choose to wait to test their rights by other proceedings. Instead, they went into the district court of the Parish of East Baton Rouge and sought to enjoin the Secretary of State and the State Auditor from compiling and promulgating the returns of the election which was held on June 14, 1949 and from declaring that any person participating in that election was elected to any municipal office in the town of New Roads. The demand for the injunction was predicated on the alleged absolute nullity of the said election for the same reasons as it had been attacked in the injunction suit in the district court of Pointe Coupee Parish. In addition to the Secretary of State and the State Auditor, the Board of Supervisors of Elections of the Parish of Pointe Coupee and all the parties who had been elected in that election were made parties defendant and judgment was prayed for against them all decreeing the nullity of the election.
That suit was met with certain exceptions in the district court of East Baton Rouge Parish, the principal one being an exception to the jurisdiction of that court. *1025 After the exception had been disposed of and the rule for a preliminary injunction had been tried and the injunction granted, .a suspensive appeal was denied the respondents. On application for writs to this Court, a suspensive appeal was granted on the authority of Act 29 of 1924 and Act 15 of the 2d Extra Session of 1934, to the Secretary of State and the State Auditor and also to the Board of Supervisors of Elections of Pointe Coupee Parish, without bond, and to the other parties respondent upon their furnishing bond in the sum of $500. The granting of the suspensive appeal to the State officials had the effect of releasing them from the injunction which had been placed on them by the judgment of the district court, whereupon the Secretary of State proceeded with the performance of his ministerial duty by promulgating the returns of the election and certifying Eanglois and the others who had been elected, and in due time commissions were issued to them 'by the Governor of the State.
Under the circumstances it becomes obvious that we are presented with a moot question on this appeal. The purpose of the suit filed in the district court of East Baton Rouge Parish was to enjoin the Secretary of State and the State Auditor from compiling and promulgating the returns of the election of June 14, 1949, and from certifying the parties who had been therein elected. In that respect the suit against these State officers was properly brought in that Court as their official domicile is in •the Parish of East Baton Rouge. As far as they are concerned, therefore, the case is now without an object as since the granting of the suspensive appeal the acts sought to be enjoined have been performed and the matter is now moot. Even were this-Court inclined to do so, however, it could not maintain the injunction sought because -“an injunction will not lie to enjoin the doing of a thing already done.” Dunham v. Town of Slidell, 133 La. 212, 62 So. 635, 636; Trevigne v. School Board, 31 La.Ann. 105; Callan v. Board of Commissioners of Fire Department, 45 La.Ann. 673, 12 So. 834. For these reasons, this appeal will be dismissed.
A separate decree will be entered in each case, the one which follows to be the decree in suit docketed under No. 39,485.
For the reasons stated it is ordered that the judgment appealed from in suit No. 39,485 of the docket of this Court be and' the same is hereby affirmed at the costs of the defendants, appellants.
LE BLANC, Justice.
For the reasons assigned in the opinion this day handed down in the consolidated cases of Lionel J. Langlois, et al. v. Bradford Lancaster et al. No. 39,485 and J. Bradford Lancaster et al. v. Wade O. Martin, Jr., et al. No. 39,584,
It is ordered that the appeal in case bearing No. 39,584 of the docket of this Court be and the same is hereby dismissed at the costs of the plaintiffs.